JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TIMOTHY PALMER, an individual, TIMOTHY PALMER on behalf of himself and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AVENU INSIGHTS AND ANALYTICS, LLC, a Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:20-cv-10591-SPG-SK<br><br>**ORDER GRANTING MOTION FOR APPROVAL OF SETTLEMENT OF CLAIMS BROUGHT UNDER THE PRIVATE ATTORNEYS' GENERAL ACT AND REASONABLE ATTORNEYS' FEES, COSTS, AND ENHANCEMENTS** |

Before the Court is Timothy Palmer's ("Plaintiff") Motion for Approval of Settlement of Claims Brought Under the Private Attorneys' General Act and Reasonable Attorneys' Fees, Costs, and Enhancement Payment ("Motion"). (ECF No. 53 ("Mot.")). Having considered Plaintiff's submissions, the relevant law, and the record in this case, the Court GRANTS the Motion.

# I. BACKGROUND

## A. Factual Background

The first amended complaint "(FAC") alleges as follows: On January 1, 2017, Plaintiff began his employment with Conduent, Inc. ("Conduent"). (ECF No. 20 ¶ 17 ("FAC")). Plaintiff's division at Conduent was acquired by Defendant Avenu Insights and Analytics, LLC ("Avenu") in or about September of 2018. (*Id.*). Plaintiff was classified through his employment with both Conduent and Avenu as an exempt employee. (*Id.* ¶ 18). Throughout his employment with Conduent and Avenu, Plaintiff worked in excess of eight hours a day and 40 hours a week for which he did not receive proper compensation. (*Id.* ¶ 19). Plaintiff was paid on a salary basis and throughout his employment with Conduent and Avenu, he was not paid overtime based on his regular rate of pay. (*Id.* ¶ 20). Moreover, there were hours worked for which Plaintiff did not receive at least minimum wage on days or weeks that he worked more than eight hours in a day and 40 hours in a week. (*Id.* ¶ 21). Plaintiff worked with similarly situated employees that were paid a salary and were not paid for all hours worked. (*Id.* ¶ 22). However, neither Conduent nor Avenu had a policy or procedure that ensured that Plaintiff or similarly situated employees could take an uninterrupted rest or meal break. (*Id.* ¶ 29). When Plaintiff or similarly situated employees would travel for work, the ability to take a legally compliant uninterrupted rest or meal break was compromised and "often not possible." (*Id.* ¶¶ 30, 32). Plaintiff requested and received copies of his payroll records and said records are deplete of records showing that Plaintiff was properly paid for all time worked or allowed the opportunity to take lawful rest and meal breaks uninterrupted. (*Id.* ¶ 35). Plaintiff is informed and believes that if he was to review similarly situated employee's payroll records, the same would be true. (*Id.* ¶ 36).

Before Conduent was acquired by Avenu, Plaintiff and similarly situated employees executed a 2018 Sales Commission Plan ("SCP"). (*Id.* ¶¶ 41–42). Once Conduent was acquired by Avenu, Plaintiff was told by his manager, the VP of Sales, that he would be "really happy with the new comp plan" and, if Plaintiff closed a $2,184,000 deal, he would

make four percent of the sale. (*Id.* ¶ 45). The VP of Sales sent Plaintiff an email on February 8, 2019, stating that the compensation plan had been approved at four percent. (*Id.* ¶ 46). In or about April of 2019, Plaintiff received $45,454.08. (*Id.* ¶ 50). However, Plaintiff was advised after he secured the sale that the other $45,454.08 was being held back "for completion of implementation." (*Id.*). Plaintiff never agreed to wait for the balance of his commission to be paid after implementation. (*Id.* ¶ 51). Although Plaintiff was paid two percent of the commission in a timely manner, the rest was withheld. *See* (*id.* ¶ 52). To date, Plaintiff has never received the remaining $45,454.08 he was promised. (*Id.* ¶ 56).

Plaintiff resigned from his position as Public Sector Client Executive on August 9, 2019, (*id.* ¶ 63), because Avenu refused to pay the remainder of his commission. (*Id.*). The FAC alleges that, as a result of Conduent and Avenu's failure to properly pay all hours worked, pay overtime, pay at least minimum wage, pay commission promised and earned, or to provide timely or uninterrupted rest and meal breaks, Plaintiff and similarly situated employees did not receive proper wage statements. (*Id.* ¶ 59).

**B. Procedural Posture**

1. Filing of FAC

On May 14, 2020, Plaintiff sent Private Attorneys General Act ("PAGA") notice to California's Labor and Workforce Development Agency ("LWDA"), Avenu, and Avenu's counsel. (*Id.* ¶ 64). No correspondence was thereafter received indicating that the LWDA intended to pursue the matter. (*Id.* ¶ 67).

On September 8, 2020, after the prescribed 65-day waiting period, Plaintiff filed a representative action complaint in the Los Angeles County Superior Court. (ECF No. 1-1). On November 19, 2020, Defendant Avenu removed the case to this Court pursuant to federal diversity jurisdiction. (ECF No. 1).

On February 25, 2021, Plaintiff filed the operative FAC. (FAC). The FAC asserts the following causes of action: (1) Individual Claim via Labor Code Sections 2698 and 2699, *et seq.*, for Retaliation in Violation of California Labor Code Sections 98.6 and

1102.5 against Avenu and DOES 1 through 50, (*id.* ¶¶ 68–71); (2) Individual and Representative Claims via Labor Code Sections 2698 and 2699, *et seq.*, for Violation of California Labor Code Sections 201, 202, and 203 against Avenu and DOES 1 through 50, (*id.* ¶¶ 72–81); (3) Individual and Representative Claim via Labor Code Sections 2698 and 2699, *et seq.*, for Violation of California Labor Code Section 204 against Conduent as an Individual Claim, and Individual and Representative Claims against Avenu and DOES 1 through 50, (*id.* ¶¶ 82–89); (4) Individual and Representative Claims via Labor Code Sections 2698 and 2699, *et seq.*, for Violation of California Labor Code Sections 226, 226.3, and 226.6 against Conduent as an Individual Claim, and Individual and Representative Claims against Avenu and DOES 1 through 50, (*id.* ¶¶ 90–94); (5) Individual and Representative Claims via Labor Code Sections 2698 and 2699*, et seq.*, for Violation of California Labor Code Section 510 against Conduent as an Individual Claim, and Individual and Representative Claims against Avenu and DOES 1 through 50, (*id.* ¶¶ 95–105); (6) Individual and Representative Claims via Labor Code Sections 2698 and 2699, *et seq.*, for Violation of California Labor Code Section 512 against Conduent as an Individual Claim, and Individual and Representative Claims against Avenu and DOES 1 through 50, (*id.* ¶¶ 106–111); (7) Individual and Representative Claims via Labor Code Sections 2698 and 2699, *et seq.*, for Violation of California Labor Code Sections 1174(d), 1194, 1197, 1197.1, and 1199 against Conduent as an Individual Claim, and Individual and Representative Claims against Avenu and DOES 1 through 50, (*id.* ¶¶ 112–119); (8) Individual and Representative Claims via Labor Code Sections 2698 and 2699, *et seq.*, for Violation of California Labor Code Section 1174(d) against Conduent as an Individual Claim, and Individual and Representative Claims against Avenu and DOES 1 through 50, (*id.* ¶¶ 120–125); (9) Individual and Representative Claims via Labor Code Sections 2698 and 2699, *et seq.*, for Violation of California Labor Code Section 1198 against Conduent as an Individual Claim, and Individual and Representative Claims against Avenu and DOES 1 through 50, (*id.* ¶¶ 126–131); (10) PAGA for Violations of Labor Code Sections 98.6, 201, 202, 203, 204, 226, 226.3, 226.6, 226.7, 432.5, 510, 512, 751.8, 1102.5, 1174(d),

1194, 1197, 1197.1, 1199, 2751 against Avenu and DOES 1 through 50, (*id.* ¶¶ 132–138); (11) Violation of California Business and Professions Code Section 17200 against Conduent, Avenu, and DOES 1 through 50, (*id.* ¶¶ 139–150); (12) Individual and Representative Claims via Labor Code Sections 2698 and 2699, *et seq.*, for Violation of California Labor Code Section 2751 against Avenu and DOES 1 through 50, (*id.* ¶¶ 151–158); (13) Breach of Oral Contract in Violation of California Civil Code Sections 1549 and 1550 against Avenu and DOES 1 through 50, (*id.* ¶¶ 159–169); and (14) Fraud against Avenu and DOES 1 through 50, (*id.* ¶¶ 170–190).

Plaintiff's individual claims have since been confidentially settled. (Mot. at 16).

2. Motion to Approve PAGA Settlement

On August 16, 2021, the parties filed a joint stipulation to dismiss Conduent from the case with prejudice. (ECF No. 45). The Court approved the stipulation on August 23, 2021. (ECF No. 46). Then, on July 25, 2022, counsel for Plaintiff and Avenu filed a joint stipulation to continue trial and corresponding dates pending settlement in the matter. (ECF No. 49). This stipulation explained that the parties had been engaged in substantive settlement discussions and had reached a settlement in principle. (*Id.* ¶ 4). The Court approved this stipulation on July 26, 2022. (ECF No. 50). On November 1, 2022, Plaintiff and Avenu filed the instant Motion. Attached to the Motion is a declaration signed by Plaintiff's counsel and exhibit. (ECF No. 53-1). On December 29, 2022, the Court issued a Minute Order explaining that the Motion lacked sufficient detail to evaluate whether approval was appropriate. *See* (ECF No. 56). Thereafter, Plaintiff filed a Supplement to the Motion on February 1, 2023. (ECF No. 57 ("Supp.")). Attached to the Supplement is another declaration signed by Plaintiff. (ECF No. 57-1).

Pursuant to the proposed PAGA settlement, Avenu has agreed to pay a non-reversionary Gross Settlement Amount ("GSA") of $35,000.00, exclusive of the payment to the Settlement Administrator, which will resolve Plaintiff's representative claim filed on behalf of the State of California and a class of "Aggrieved Employees," defined as:

> [A]ll current and former non-exempt employees who worked for Avenu in California at any time during the PAGA Period. The PAGA Period means the time-period from May 14, 2020, through the date of the Court Order granting approval of the PAGA settlement. The number of Aggrieved Employees, including Plaintiff, is estimated to be 4 individuals.

*See* (ECF Nos. 53 at 8; 53-1 ¶ 4, Ex. 1 §§ I.2, I.9, III.2 ("Settlement")). 100 percent of the NSA shall be designated as "civil penalties." (Settlement § III.4). Avenu shall deposit the GSA into a Qualified Settlement Account and has agreed to fund the settlement within 30 days of the Court's Order approving the Settlement. (*Id.* § III.2). The Settlement shall be used to pay: (1) Amounts distributable to California's LWDA and Aggrieved Employees; (2) Plaintiff's attorneys fees and costs; and (3) Plaintiff's Enhancement Payment. (*Id.*). After deducting amounts for requested attorneys' fees, litigation costs, and Plaintiff's Enhancement Payment, the Settlement provides for the remaining Net Settlement Amount ("NSA") to be distributed 75 percent to the LWDA and 25 percent to Aggrieved Employees, as defined by the Settlement, pursuant to California Labor Code Section 2699(i). (*Id.* §§ I.10, III.4). The 25 percent portion will be paid to Aggrieved Employees pro rata, based on the number of pay periods worked by each Aggrieved Employee during the "PAGA Period." (*Id.* § III.4).

Per the Settlement, Plaintiff's counsel requests, and Avenu does not oppose, 37.5 percent of the GSA (i.e., $13,135.00) in attorney's fees, $834.89 in litigation costs, and an Enhancement Payment of $3,500 for Plaintiff, the named representative "in recognition of the efforts in bringing this case to successful resolution by providing substantial factual information and documents to counsel, assisting in identifying potential witnesses, and attending numerous meetings with Plaintiff's counsel." (ECF No. 53-1 ¶¶ 4-5); (Settlement §§ I.9, III.3). The parties have agreed to engage Phoenix Settlement Administrators ("Phoenix") as the third-party settlement administrator. *See* (Settlement §§ I.4; IV.1).

After deducting these amounts, the Settlement provides for a distribution of $17,540.11 in NSA left for the Aggrieved Employees and LWDA. (*Id.* ¶ §§ I.10, III.3). Thus, 75 percent of this NSA (approximately $13,155.08) will be allocated to the LWDA,

and 25 percent (approximately $4,385.03) to Aggrieved Employees, pursuant to the requirements of the PAGA. *See* (*id.* Mot. at 9); Cal. Lab. Code § 2699(i). As discussed above, there are approximately four Aggrieved Employees. *See* (Settlement § I.2). Thus, Plaintiff estimates that the average individual will receive approximately $1,096.26. (Mot. at 9). This portion will be paid to all Aggrieved Employee's pro rata, based on the number of pay periods worked by each Aggrieved Employee during the PAGA Period. (Settlement § III.4).

## II. LEGAL STANDARD

Under California's PAGA, an aggrieved employee may bring an action for civil penalties for California Labor Code violations on behalf of himself and other current or former employees. Cal. Lab. Code § 2699(a). PAGA's "declared purpose is to supplement enforcement actions by public agencies, which lack adequate resources to bring all such actions themselves." *Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009) (citation omitted). Thus, a plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." *Id.* "In a lawsuit brought under [PAGA], the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies – namely, recovery of civil penalties that otherwise would have been assessed and collected by the [LWDA]." *Id.* (citation omitted). As to recovery: 75 percent of any civil penalties recovered must be distributed to the LWDA, with 25 percent designated to the aggrieved employees. Cal. Lab. Code § 2699(i). A judgment in a PAGA action "binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Arias*, 46 Cal. 4th at 986; *see also Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 381 (2014) ("When a government agency is authorized to bring an action on behalf of an individual or in the public interest, and a private person lacks an independent legal right to bring the action, a person who is not a party who is represented by the agency is bound by the judgment as though the person were a party." (citation omitted)).

The PAGA statute imposes limitations on litigants. First, because a PAGA action functions as a "substitute" for an action brought by the state government, a plaintiff suing under PAGA is limited to recovery of civil penalties only. *See Iskanian*, 59 Cal. 4th at 381 (citation omitted). Second, to bring an action under PAGA, an aggrieved employee must first provide written notice to the LWDA as well as to the employer. Cal. Lab. Code § 2699.3(a)(1)(A). Third, the proposed settlement must be submitted to the LWDA, and a trial court must "review and approve" any settlement of PAGA claims. Cal. Lab. Code § 2699(*l*)(2).

To do so, California courts have applied a Rule 23-like standard, asking whether the settlement of the PAGA claims is fundamentally fair, adequate, and reasonable in light of PAGA's polices and purposes. *Moniz v. Adecco USA, Inc.*, 72 Cal. App. 5th 56, 77 (2021) ("Given PAGA's purpose to protect the public interest, we also agree with the LWDA and federal district courts that have found it appropriate to review a PAGA settlement to ascertain whether a settlement is fair in view of PAGA's purposes and policies." (citations omitted)). Many of the same factors used to evaluate the fairness of a class action settlement can be "useful" in evaluating the fairness of a PAGA settlement. *Id.* These include: (1) the strength of plaintiffs' claims; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the extent of discovery completed, (5) the stage of the proceedings; and (6) the experience and views of counsel. *Officers for Just. v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982). However, unlike class action claims, "[u]nnamed employees need not be given notice of the PAGA claim, nor do they have the ability to opt-out of the representative PAGA claim. *Ochoa-Hernandez Cjaders Foods, Inc.*, No. C 08-2073 MHP., 2010 WL 1340777, at *4 (N.D. Cal. Apr. 2, 2010). "Moreover, unlike the binding finality of a class action with respect to damages, the individual employee has less at stake in a PAGA representative action: if the employer defeats a PAGA claim, the nonparty employees, because they were not given notice of the action or afforded an opportunity to be heard, are not bound by the judgment as to remedies other than civil penalties." *Id.* at *5 (citing *Arias*, 46 Cal. 4th at 987).

## III. DISCUSSION

### A. Fairness of Settlement Value

The Court concludes the Settlement is fair, adequate, and reasonable.

First, the Court finds that the Settlement reflects the informed views of experienced counsel and is the product of serious, arms-length negotiations conducted after investigation and discovery. The Court notes that the parties arrived at the Settlement after engaging in early-stage informal discovery, *see* (ECF No. 57-1 ¶¶ 6–9), whereupon Plaintiff's counsel confirmed the accuracy of the information informally received by Avenu to assess an adequate settlement value. (*Id.*). Plaintiff's counsel also declares that she has extensive experience litigating employment cases. *See* (*id.* ¶ 12). More specifically, Plaintiff's counsel has tried "numerous" court trials, including PAGA claims, on both sides. (*Id.*).

Second, the Court also finds that the Settlement adequately reflects the strength of Plaintiff's case, weighed against the risk, expense, complexity, and likely duration of further litigation. Per the filed Supplement, Plaintiff maintains that he did not receive all wages due, as required under California Labor Code Sections 201 and 202. (Supp. at 3). This includes the previously mentioned unpaid commission, for which there was no written agreement, as required by California Labor Code Section 2751. (*Id.*). Further, Plaintiff maintains that Avenu was required to pay him in compliance with the commission exemption to be a valid "exempt commission employee." (*Id.* at 3–4). Plaintiff asserts that Avenu's payroll practices were such that they only paid commissions once a month. (*Id.* at 4). Plaintiff argues that because "the law required commissioned employees be paid at least two times minimum wages and at least half of the wages be commissions, [and] because the commissions were only paid once a month, Plaintiff was not exempt at least 50% of his time at Avenu." (*Id.*). For these reasons, Plaintiff argues that the value of his PAGA claims are $50,628.35.[1] (*Id.*).

---

[1] Plaintiff's counsel contrarily declares that the total value of Plaintiff's claims are $550,628.35. (ECF No. 57-1 ¶ 2). However, this number appears to be inconsistent with

On the other hand, Plaintiff concedes that because "there are only three other aggrieved employees," and these employees did sign their commission agreement, "it is expected that [their] claims will have less value than those of Plaintiff." (Supp. at 4); (ECF No. 57-1 ¶¶ 2–9). Moreover, further litigating this case would require each of these aggrieved employees to examine where the violations lie, with the understanding that the employees similarly situated with Plaintiff would have the same type of claims for not being exempt at least 50% of their time during the covered period. (Supp. at 4). For this reason, Plaintiff expects that, if litigation were to continue, an additional four to six months of expenses would be incurred. (*Id.*). Moreover, if the case reached a trial, Plaintiff acknowledges that, unlike a settlement, there is always a risk that Plaintiff could lose. (ECF No. 57-1 ¶¶ 16-17). After all, the very essence of a settlement is compromise, i.e., the "yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1988) (internal quotations omitted). For these reasons, the Court finds the proposed GSA of $35,000.00 to be reasonable in light of the strength of Plaintiff's case, weighed against the possible risks of further litigation.

Third, the total Settlement value is appropriate in light of the extent of discovery completed in this case and the current stage of the proceedings. As previously discussed, Plaintiff and Avenu engaged in informal discovery rather than formal discovery. Plaintiff acknowledges that Avenu was cooperative and provided the requested information which included the total number of aggrieved employees, their dates of employment, and title. (Supp. at 5). Had the Settlement not been reached, the parties would have participated in mediation, formal discovery, and a possible trial on the merits – thus, necessitating a larger settlement value given the increase in expenses.

For all of these reasons, the Court finds the $35,000.00 GSA to be fair, adequate, and reasonable.

---

the facts and the statements of the Motion. For this reason, the Court treats the larger of these numbers as a scrivener's error.

**B. Fairness of Requested Award of Attorney's Fees and Litigation Costs**

As to Plaintiff's requested attorney's fees and costs, the Court also finds it to be reasonable. PAGA provides that "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Labor Code § 2699(g)(1). However, the statute "does not set forth a specific standard for evaluating a request for attorneys' fees in connection with a PAGA settlement." *Boddie v. Signature Flight Support Corp.*, Case No. 19-cv-03044-DMR, 2021 WL 2651369, at *9 (N.D. Cal. June 28, 2021). As previously discussed, the Settlement creates a common fund available to all members of the Aggrieved Employee class. Where, as here, the settlement of the action creates a common fund, "the district court has discretion . . . to choose either the percentage-of-the-fund or the lodestar method" to determine an award of attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). Courts analyzing attorney's fees in PAGA cases have used both methods. *Ramirez v. Benito Valley Farms, LLC*, Case No. 16-CV-04708-LHK, 2017 WL 3670794, at *6–7 (N.D. Cal. Aug. 25, 2017) (applying lodestar method); *Patel v. Nike Retail Servs., Inc.*, Case No. 14-cv-04781-RS, 2019 WL 2029061, at *4 (N.D. Cal. May 8, 2019) (using both the lodestar and the percentage methods); *Rincon v. West Coast Tomato Growers, LLC*, Case No. 13-CV-2473-JLS (KSC), 2018 WL 828104, at *5 (S.D. Cal. Feb. 2, 2018) (using both the lodestar and the percentage methods). Regardless of which method is used, courts "have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted). The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048-50.

Under the percentage-of-the-fund method, the Ninth Circuit has established 25 percent of the common fund as the "benchmark" for attorneys' fees, with 20 percent to 30

percent as the usual range. *Vizcaino*, 290 F.3d at 1047. An explanation is necessary when the district court departs from the "benchmark" of 25% of recovery. *Powers*, 229 F.3d at 1256-57. Importantly, for present purposes, California courts recognize that it may award attorney's fees in the 30 percent-to-40 percent range in wage and hour class actions that result in recovery of a common fund under $10 million. *Martin v. AmeriPride Servs.*, CASE NO. 08cv440-MMA (JMA), 2011 WL 2313604, at *8 (S.D. Cal. 2011) (listing cases). Here, Plaintiff's counsel is requesting 37.5 percent in attorney's fees in a wage and hour case that has resulted in a Settlement of less than $10 million in total value. Thus, this fee request falls well within the range found acceptable by California courts in other cases. Moreover, Plaintiff's counsel explains that she took this case on a contingency and thus, bears the risk of not receiving any award at trial. For these reasons, the Court finds that Plaintiff's request is reasonable under the percentage-of-the-fund method. *See id.* (awarding attorney's fees of 25% (totaling approximately $1.3 million) because, among other things, plaintiff's counsel took case on contingency).

The Court also finds Plaintiff's requested litigation costs are minimal and therefore, reasonable. From its review of the record, the Court finds all of Plaintiff's litigation costs are documented and reasonably incurred. *See* (ECF No. 53-1 ¶ 8, Ex. 2). Moreover, the costs Plaintiff seeks are the types of costs routinely approved by courts. *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (counsel should recover "those out-of-pocket expenses that would normally be charged to a fee paying client"); *Ashker v. Sayre*, No. 05-03759 CW., 2011 WL 825713, at *3 (N.D. Cal. Mar. 7, 2011) ("costs of reproducing pleadings, motions and exhibits are typically billed by attorneys to their fee-paying clients" and are reimbursable); *Trustees of Const. Industry & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006) (legal research costs are reimbursable); *In re Immune Responses Sec. Litig.*, 497 F. Supp. 2d 1166, 1177–78 (S.D. Cal. 2007) (mediation expenses, consultant and expert fees, legal research, copies, postage, filing fees, messenger and overnight delivery costs are reimbursable).

### C. Fairness of Requested Enhancement Payment

Courts routinely approve enhancement payments to compensate named plaintiffs for the services they provide and the risks they incur during representative litigation. *See, e.g.*, *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 726 (2004) (upholding "service payments" to named plaintiffs); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) (approving $50,000 incentive payment).

Here, Plaintiff seeks an enhancement payment of $3,500.00. This request is reasonable given Plaintiff's efforts in this case and the risks he undertook on behalf of the Aggrieved Employees. In particular Plaintiff assisted his counsel in bringing this case to a successful resolution by providing substantial factual information and documents to counsel, assisting in identifying potential witnesses, and attending numerous meetings with his counsel relevant to this case. (ECF No. 53-1 ¶ 5).

## IV. CONCLUSION

For the foregoing reasons, the Motion is GRANTED.

**IT IS SO ORDERED.**

Dated: April 3, 2023

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE